IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES ELI HUFF II, | § | |
| Reg. No. 666071-079, | § | |
| | § | |
| Petitioner, | § | |
| | § | CIVIL ACTION NO. H-05-3177 |
| v. | § | (CRIMINAL NUMBER H-02-742) |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Respondent. | § | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Petitioner, James Eli Huff II, has filed a motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Docket Entry No. 1 in C.A. No. H-05-3177) on September 12, 2005.  On October 17, 2005, the court entered an order granting petitioner's Motion for Leave to Amend his original motion (Docket Entry No. 38 in Criminal No. H-02-742).  Petitioner filed his Amended Motion on October 14, 2005 (Docket Entry No. 36 in Criminal No. H-02-742).  The United States filed an Answer and Motion to Dismiss on October 28, 2005 (Docket Entry Nos. 40 and 41 in Criminal No. H-02-742).  The court granted leave for petitioner to file a Reply (Docket Entry No. 42 in Criminal No. H-02-742), and petitioner filed his Reply on November 23, 2005 (Docket Entry No. 43 in Criminal No. H-02-742).  Having carefully reviewed the petitioner's motion, amended motion, the government's response and motion to dismiss, and the petitioner's reply, the court is

persuaded that petitioner is not entitled to any relief and the government's motion to dismiss should be granted.

## I. Factual and Procedural Background

On December 20, 2002, Huff was charged by criminal information with a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), possession of a firearm, after having been convicted of a felony offense. On the same day, the government filed its notice of intention to seek enhanced punishment under the Armed Career Criminal Act of 1984 ("ACCA"), 18 U.S.C. § 924(e), because of Huff's three prior convictions for violent felonies or serious drug offenses. On December 30, 2002, Huff waived indictment and agreed to proceed with the criminal information. Huff appeared before this court on January 31, 2003, and pleaded guilty to the information. There was no plea agreement. On May 16, 2003, this court found that Huff had three prior convictions -- two for violent felonies and one for a serious drug offense -- and his sentence was enhanced under the ACCA, 18 U.S.C. § 924(e), which imposes a mandatory minimum sentence on anyone who violates § 922(g)(1) and has three previous convictions for a violent felony or a serious drug offense. Pursuant to § 924(e), the court sentenced Huff to confinement for 180 months, five years of supervised release, a $3,000 fine, and a $100 special assessment. On May 16, 2003, the court also sentenced Huff to 24 months of imprisonment in Criminal Case No. H-01-869, a supervised release

-2-

revocation, to run consecutively with his sentence for the firearms violation.

Huff appealed from the judgment of conviction and sentence in Criminal No. H-02-742.  On May 13, 2004, the United States Court of Appeals affirmed Huff's conviction and sentence.  United States v. Huff, 370 F.3d 454 (5th Cir. 2004).  Huff filed a petition for rehearing, which was denied on June 16, 2004.  Huff's judgment of conviction became final on September 15, 2004, and he timely filed a motion for relief under 28 U.S.C. § 2255 on September 12, 2005.

## II.  **Analysis**

This court has jurisdiction over Huff's petition under 18 U.S.C. § 2255.  Section 2255 provides a federal prisoner with a post-conviction remedy to test the legality of his detention by filing a motion to vacate the judgment and sentence in the trial court.  Kuhn v. United States, 432 F.2d 82, 83 (5th Cir. 1970).  A petitioner in custody "may move the court which imposed the sentence to vacate, set aside, or correct the sentence."  28 U.S.C. § 2255.

There are four grounds upon which a federal prisoner can move to vacate, set aside, or correct his sentence.  Id.  These grounds are (1) sentences imposed in violation of the Constitution or laws of the United States, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims

-3-

that the sentence is otherwise subject to collateral attack.  Id. See also United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996).

Huff requests an evidentiary hearing on his § 2255 motion.  A district court may deny a § 2255 motion without an evidentiary hearing only "if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." United States v. Bartholomew, 974 F.2d 39, 41 (5th Cir. 1992). None of the claims made by Huff require the court to look outside the record and pleadings to make a determination as to the validity of Huff's claims.  Therefore, the court will deny Huff's request for an evidentiary hearing on this matter.

## A.   Rule 11

Huff first argues that his plea was rendered involuntary by the district court's failure at his rearraignment hearing to properly admonish him of the correct maximum term of supervised release.  At his rearraignment, the court told Huff that he would be subject to a minimum term of 15 years' imprisonment and a maximum term of life followed by "supervised release of at least two years but not more than three years . . . ."  (Rearraignment, 9:13-9:14)  Huff's argument is two-fold:  that the court applied an incorrect maximum term of supervised relief and that he was advised of an incorrect maximum term of supervised release, rendering his plea involuntary.

-4-

Huff's first argument is without merit.   A violation of 18 U.S.C. § 922(g)(1) is a Class C felony, which subjects a defendant to up to three years of supervised release.   18 U.S.C. §§ 924(a)(2), 3559(a)(3), 3583(b).   However, the court determined that Huff met the criteria for the enhanced penalty provisions of the ACCA, 18 U.S.C. § 924(e).   Section 924(e) provides a statutory minimum penalty of 15 years and a maximum term of life in prison.   See United States v. Carpenter, 963 F.2d 736, 743 (5th Cir. 1992).   Because § 924(c) has a maximum term of life imprisonment, it is a Class A felony.   18 U.S.C. § 3559(a)(1).   The statutorily authorized term of supervised release for a Class A felony is not more than five years.   18 U.S.C. § 3583(b)(1).[1]   Under the current version of the United States Sentencing Guidelines ("U.S.S.G.") and the U.S.S.G. in place at the time of Huff's sentencing, a term of supervised release for a Class A felony shall be at least three years but not more than five years.   U.S. SENTENCING GUIDELINES MANUAL § 5D1.2 (2005).

The second prong of Huff's argument concerns the court's failure to properly advise him regarding the term of supervised release during his rearrangement.   Federal Rule of Criminal Procedure 11 sets out a number of requirements for a district court

---

[1]Huff also argues that he should not have been subject to the 18 U.S.C. § 924(e) enhancement.   As the court discusses later in this opinion, Huff was properly subject to the § 924(e) enhancement.

to accept a defendant's guilty plea.  Rule 11 requires that the court inform the defendant of, and determine that the defendant understands, any mandatory minimum penalty, as well as any maximum possible penalty, including imprisonment, fine, and term of supervised release. FED. R. CRIM. P. 11(b)(1)(H)&(I).  Huff was not informed of the correct minimum or maximum period of supervised release during the plea colloquy.  The court stated that "[t]he maximum sentence you face is life in prison.  The minimum sentence you face is 15 years in prison.  In addition to any period of imprisonment you face a fine of up to $25,000, supervised release of at least two years but not more than three years and a one-hundred dollar special assessment." (Rearraignment, 9:10-9:15)  As noted above, Huff, if found to have three prior federal convictions for felonies or serious drug offenses, would face a maximum term of supervised release of five years, not three.  (The sentence data sheet submitted by the government also erroneously listed a maximum term of supervised release of three years.)  Huff was found at sentencing to have three prior qualifying federal convictions, and was sentenced to 180 months imprisonment, a $2,000 fine, a $100 special assessment, and five years of supervised release.  The court adequately explained the effect and meaning of supervised release, and Huff does not argue any error based on the explanation of supervised release.

-6-

Relief from a Rule 11 error is a collateral challenge limited to situations "involving 'transgressions of constitutional rights and for the narrow compass of other injury that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.'" <u>United States v. Guerra</u>, 94 F.3d 989, 995 (5th Cir. 1996) (quoting <u>United States v. Perez</u>, 952 F.2d 908, 909 (5th Cir. 1992). "Relief from a formal or technical violation of Rule 11 is not available under a § 2255 collateral attack." <u>United States v. Armstrong</u>, 951 F.2d 626, 629 (5th Cir. 1992) (citing <u>United States v. Timmreck</u>, 99 S.Ct. 2085, 2087-88 (1979)).  To obtain relief on a Rule 11 violation, Huff's claim must also be a constitutional violation.[2]

A violation of Rule 11 warrants § 2255 relief only if the violation is (1) jurisdictional or constitutional, (2) a fundamental defect resulting in a complete miscarriage of justice, (3) an omission that is not consistent with the rudimentary demands

---

[2]The actual prejudice referenced by <u>Keel</u> differs from the cause-and-prejudice procedural bar.  Ordinarily, when raising issues of constitutional or jurisdictional significance for the first time on collateral review, a defendant must show both cause for his procedural default and actual prejudice resulting from the error.  <u>See</u> <u>United States v. Gaudet</u>, 81 F.3d 585, 589 (5th Cir. 1996).  In this case, however, Huff need not show cause and prejudice because the government has waived this procedural bar by not raising it in its pleadings.  <u>Id.</u>  <u>See also</u> <u>United States v. Drobny</u>, 955 F.2d 990, 995 (5th Cir. 1992).  Although the court may raise the procedural bar <u>sua sponte</u>, "it should not do so lightly" and declines to do so in this case, given the fact that Huff was not notified that the procedural default would be an issue for consideration.  <u>United States v. Willis</u>, 273 F.3d 592, 597 (5th Cir. 2001).

of fair procedure, or (4) presents exceptional circumstances. United States v. Saldana, 731 F.2d 1192, 1193 (5th Cir. 1984). See also United States v. Vonn, 122 S.Ct. 1043, 1049 (2002) (noting that to obtain § 2255 relief, a defendant show that the Rule 11 proceeding was "inconsistent with the rudimentary demands of fair procedure" or constituted "a complete miscarriage of justice" (citations omitted)); Timmreck, 99 S.Ct. at 2086-87. In addition to proving a failure of literal compliance with Rule 11, Huff must also plead and prove actual prejudice. See Saldana, 731 F.2d at 1193; Keel v. United States, 585 F.2d 110 (1978) (en banc).[3]

As the government notes, a technical violation of Rule 11 is neither constitutional nor jurisdictional. Armstrong, 951 F.2d at 629. However, Huff's pleadings do raise a constitutional concern -- that his plea of guilty was not knowing and voluntary. Due process requires that a plea of guilty must be a voluntary, knowing, and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences. Brady v. United States, 90 S.Ct. 1463, 1468 (1970).

---

[3]The more stringent standard for evaluating Rule 11 violations in guilty pleas on direct appeal is articulated by the Fifth Circuit in United States v. Johnson, 1 F.3d 296 (5th Cir. 1993). On direct appeal the court conducts a harmless error analysis by asking two questions: (1) Did the sentencing court in fact vary from the procedures required by Rule 11, and (2) if so, did the variance affect substantial rights of the defendant? Id. at 298. This standard is addressed later in this opinion when addressing Huff's ineffective assistance of counsel claim.

Huff argues that his plea was not entered voluntarily and knowingly. Huff's pleadings appear to use voluntary and knowing interchangeably.[4] Although the terms "voluntary" and "knowing" are frequently used interchangeably, "strictly speaking, the terms embody different concepts." United States v. Hernandez, 234 F.3d 252, 255 n.3 (5th Cir. 2000). A plea is not voluntary if induced by threats, misrepresentations, unfulfilled promises, or promises of an improper nature. Id. A plea is not knowing and intelligent unless a defendant pleads with sufficient awareness of the relevant circumstances and likely consequences. Guerra, 94 F.3d at 995. Huff's pleadings concern the knowing and intelligent prong.

Although Huff argues that he did not receive the information necessary to make an informed, intelligent decision to plead guilty, he fails to show that his guilty plea was not knowing and voluntary. To be knowing and intelligent, the defendant only needs to understand the direct consequences of a plea, not every consequence that, absent a plea of guilty, would not otherwise occur. Hernandez, 234 F.3d at 255. The Fifth Circuit has held that "[t]he consequences of a guilty plea, with respect to

---

[4]Huff first states that "[m]ovant argues that his plea was rendered involuntarily by the district court's failure, at his rearraignment hearing, to properly admonish him of the correct term of supervised release as Rule 11 requires." Memorandum of Law in Support of Motion to Vacate, Set Aside or Correct Sentence, Docket Entry No. 1 in C.A. No. H-05-3177, p. 2. In the next paragraph, Huff writes that "[t]he concern of Rule 11 is that a defendant have the necessary information to make an informed, intelligent decision to plead guilty." Id.

sentencing, mean only that the defendant must know the maximum prison term and a fine for the offense charged." Id. (quoting Barbee v. Ruth, 678 F.2d 634, 635 (5th Cir. 1982). See also United States v. Dees, 125 F.3d 261, 269 (5th Cir. 1997). As long as a defendant "understood the length of time he might possibly receive, he was fully aware of his plea's consequences." United States v. Rivera, 898 F.2d 442, 447 (5th Cir. 1990) (quoting Barbee, 678 F.2d at 635).

The Fifth Circuit has vacated a guilty plea on a § 2255 collateral attack when the district court informed the defendant that he faced a maximum term of imprisonment of 60 years when the actual maximum term of imprisonment was 30 years. Guerra, 94 F.3d at 995-96. There is no similar situation in this case. Huff was correctly informed that the maximum term of imprisonment he faced was life, with a minimum required term of 15 years' imprisonment. The only incorrect information concerned the term of supervised release. The Supreme Court in Timmreck held that even a complete failure to mention a term of special parole before a defendant entered a guilty plea did not constitute constitutional or jurisdictional error. Timmreck, 99 S.Ct. at 2087.[5] See also

---

[5]Special Parole was "a term of supervision served upon completion of a prison term" administered by the United States Parole Commission, and was a precursor to supervised release. Gozlon-Peretz v. United States, 111 S.Ct. 840, 844 (1991) (quoting Bifulco v. United States, 100 S.Ct. 2247, 2252 (1980)). In the Sentencing Reform Act, 18 U.S.C. § 3551 et seq., Congress undertook
(continued...)

United States v. Scott, 987 F.2d 261, 265 (5th Cir. 1993) (vacating a guilty plea on a § 2255 motion when the district court offered no explanation as to the meaning or effect of supervised release *and* misstated the minimum period of imprisonment and the maximum fine by a factor of two).

Under the more stringent direct review standard for Rule 11 violations, the Fifth Circuit has held that failing to properly inform a defendant of the effect of a term of supervised release was harmless error when the actual sentence given, including supervised release, was below that maximum period of imprisonment allowed by law under the statute. See, e.g., United States v. Reyes, 300 F.3d 555, 560-61 (5th Cir. 2002); United States v. Cuevas-Andrade, 232 F.3d 440, 444 (5th Cir. 2000). See also United States v. Pierce, 5 F.3d 791, 793-94 (5th Cir. 1993) (using the "worst case scenario" analysis in a case involving an understated maximum term of imprisonment).

Huff was faced with a sentence of life imprisonment, as he knew. Based on his understanding, Huff decided to plead guilty. Huff was actually sentenced to only 180 months' imprisonment, followed by five years supervised release, in addition to a fine and special assessment. Huff's "worst case scenario" would occur if he served every day of his 180-month prison term and had his

---

[5](...continued)
a major reform of the federal sentencing scheme, part of which involved replacing most forms of parole with a new system of supervised release overseen by the sentencing court rather than the Parole Commission. Id. at 844-45.

supervised release revoked on the last day of his supervised release term and had to serve five years after revocation of his supervised release pursuant to 18 U.S.C. § 3583(e)(3).  Even under this "worst case scenario," the total elapsed time that Huff would spend in between his first and last day in prison would be twenty-five years, significantly less than the maximum of life in prison possible under the statute.

Having concluded that Huff's argument regarding the knowingness and intelligence of his guilty plea lacks merit, the court next turns to Huff's argument that the incorrect information regarding the potential term of supervised release prejudiced him by influencing his decision to plead guilty.  As the Fifth Circuit stated in Keel, "'collateral relief is not available when all that is shown is a failure to comply with the formal requirements' of a rule of criminal procedure in the absence of any indication that the defendant was prejudiced by the asserted technical error." Keel, 585 F.2d at 113 (quoting Hill v. United States, 82 S.Ct. 468, 471 (1962)).[6]

Huff attempts to show prejudice by making the argument that the defendant in Timmreck, 99 S.Ct. at 2087, did not -- that the incorrect information concerning the potential term of supervised release materially influenced his decision to plead guilty.  Huff

---

[6]Although Keel, 585 F.2d 110, precedes Timmreck, 99 S.Ct. 2085, the Fifth Circuit has noted that its opinion in Keel anticipated the Supreme Court's decision in Timmreck and is entirely consonant with the Supreme Court opinion.  Allen v. United States, 634 F.2d 316, 317 (5th Cir. 1980).

claims that he would have proceeded to trial instead of pleading guilty had he known that his maximum term of supervised release was five rather than three years.  Huff claims that having previously been on supervised release, he is aware of what it entails.  He states that he could have successfully completed a two-to-three-year term of supervised release, but not a five-year term.

If Huff could establish that he would not have pleaded guilty had the court accurately explained the nature and consequences of supervised release, he might be entitled to § 2255 relief.  <u>See United States v. Patterson</u>, 739 F.2d 191, 195 (5th Cir. 1984); <u>Saldana</u>, 731 F.2d at 1193.  Although Huff claims that the incorrect information regarding the term of supervised release led him to plead guilty when he otherwise would not have done so, the court does not have to take Huff's statement at face value.  While the court construes a pro se application liberally, "the mere recitation of a formula, even in an affidavit, does not suffice to establish either plausibility or the right to an evidentiary hearing."  <u>Allen v. United States</u>, 634 F.2d 316, 317 (5th Cir. 1980).  In <u>Allen</u> the district court informed the defendant that his maximum sentence of imprisonment was 35 years, when it was in fact 25 years.  <u>Id.</u> at 317.  The defendant claimed that he would not have pleaded guilty had he known that he was subject to a 25 rather than a 35-year term.  <u>Id.</u>  There, as here, the defendant had not entered into a plea bargain.  <u>Id.</u>  The court found it inherently

-13-

incredible that a person would voluntarily submit himself to a possible 35-year sentence but would proceed to trial if he faced only a 25-year sentence. Id. at 317-18.  In this case the court is not persuaded that Huff, facing a maximum term of life imprisonment, would voluntarily plead guilty without benefit of a plea agreement and submit himself to a possible life sentence, yet would have taken his chances on going to trial had he known he was facing five years of supervised release instead of three.

Although Huff requests an evidentiary hearing, the court does not find that one is necessary on this issue.  The Fifth Circuit has remanded a case for an evidentiary hearing when a defendant claimed that he would not have pleaded guilty absent incorrect information in the Rule 11 colloquy.  United States v. Scott, 625 F.2d 623 (5th Cir. 1980).  In Scott the petitioner pleaded guilty after being incorrectly informed as to the possible maximum sentence of imprisonment.  Id. at 624.  The court informed the petitioner that he could be subject to a sentence of up to five years' imprisonment, but actually sentenced him under a federal law that provided for a sentence of up to six years' imprisonment. Id.  The petitioner filed a § 2255 motion, claiming that he would not have pleaded guilty had he been properly advised that his maximum term of imprisonment was six years, rather than the five he was informed of by the court.  Id.  The Fifth Circuit held that the petitioner's pleadings sufficiently alleged prejudice that, if

-14-

proved, would afford a basis for collateral relief, and ordered the district court to hold an evidentiary hearing on the matter.  <u>Id.</u> Here, no evidentiary hearing is necessary because, unlike the petitioner in <u>Scott</u>, Huff was not incorrectly informed as to the maximum possible term of imprisonment.

Huff has failed to assert a facially believable claim that he would not have pleaded guilty absent the incorrect information. Because Huff has failed to show prejudice resulting from the Rule 11 violation, he is not entitled to § 2255 relief on this issue.

**B.   <u>Apprendi</u> Challenge**

Huff claims that the length of the term of supervised release imposed violates the Supreme Court's holding in <u>Apprendi v. New Jersey</u>, 120 S.Ct. 2348 (2000).  <u>Apprendi</u> requires that "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt."  <u>United States v. Gonzales</u>, 327 F.3d 416, 420 (5th Cir. 2003) (quoting <u>Apprendi</u>, 120 S.Ct. at 2355).  Huff's brief argues that since the information under which he was charged did not include an allegation that he would be sentenced pursuant to the § 924(e) enhancement, his conviction must be vacated.  This argument is without merit.  <u>See United States v. Huff</u>, 370 F.3d 454, 462 (5th Cir. 2004) (holding

that there was no merit to Huff's argument that the sentence enhancement provisions of § 924(e) were unconstitutional under Apprendi); United States v. Stone, 306 F.3d 241 (5th Cir. 2002) (holding that neither Apprendi nor the Fifth and Sixth Amendments to the Constitution require that a § 924(e) enhancement be based on a jury finding).

## C.   Ineffective Assistance of Counsel -- Plea and Sentencing

Huff argues that his counsel was ineffective because of the following alleged failures:  (1) failure to object to the super-vised release error; (2) failure to investigate and object to using Huff's prior burglary convictions as prior violent felonies under § 924(e); and (3) failure to object to an alleged consecutive sentencing error.

There are two components to an ineffective-assistance claim: (1) deficient performance and (2) prejudice.  Strickland v. Washington, 104 S.Ct. 2052 (1984).  In the context of a guilty plea, the first prong of the Strickland test concerns whether "the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"  Id. at 2064 (quoting McMann v. Richardson, 90 S.Ct. 1441, 1449 (1970)).  Petitioner must demonstrate that "'counsel's repre-sentation fell below an objective standard of reasonableness,' with reasonableness being judged under professional norms prevailing [at] the time counsel rendered assistance."  Black v. Collins, 962

F.2d 394, 401 (5th Cir. 1992) (quoting <u>Strickland</u>, 104 S.Ct. at 2064).

To satisfy the prejudice prong, the prejudice must be such "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Lockhart v. Fretwell</u>, 113 S.Ct. 838, 842 (1993) (quoting <u>Strickland</u>, 104 S.Ct. at 2064). The court considers the following two factors in analyzing the second prong of <u>Strickland</u> in a guilty plea: (1) whether, but for counsel's error, the defendant would not have pleaded guilty but would have insisted on a trial; and (2) whether counsel's deficient performance caused the outcome of the proceeding to be unreliable or the proceeding to be fundamentally unfair. <u>See Hill v. Lockhart</u>, 106 S.Ct. 366, 369-70 (1985) (first factor); <u>Armstead v. Scott</u>, 37 F.3d 202, 206-07 (5th Cir. 1994) (first and second factors). This assessment will depend in part on a prediction of what the outcome of a trial might have been. <u>Id.</u> at 206 (citing <u>Hill</u>, 106 S.Ct. at 369-70). "And, of course, 'any amount of actual jail time has Sixth Amendment significance,' which constitutes prejudice for purposes of the <u>Strickland</u> test." <u>United States v. Conley</u>, 349 F.3d 837, 842 (5th Cir. 2003) (quoting <u>Glover v. United States</u>, 121 S.Ct. 696 (2001)) (internal citation omitted).

Huff first cites his counsel's failure to object to the term of supervised release imposed. His counsel's failure to object,

however, was not deficient.  The five-year term of supervised release was authorized by statute.  See 18 U.S.C. §§ 3559(a)(1) & 3583(b)(1).  Nor was Huff prejudiced by his attorney's failure to object to a term of supervised release that was within that authorized by statute.  However, because this court construes pro se petitions liberally, this court will look to the crux of Huff's true complaint on this issue, which is his attorney's failure to object to the incorrect term of supervised release stated to Huff before his plea of guilty.[7]  Even assuming, arguendo, that his attorney was deficient in failing to correct the stated term of supervised release, Huff fails to meet the prejudice prong of Strickland.  Had his counsel objected, the court would have corrected the stated term of supervised release, informing Huff that he would be subject to a minimum of three and a maximum of five years of supervised release.

Huff claims that had he known that he was subject to the increased supervised release term, he would have insisted on going to trial.  As the court has previously discussed, this claim is implausible.  Huff knew that under the Armed Career Criminals Act

---

[7]Although Huff's pleading states that his objection is to his counsel's "failing to object to the enhanced supervised release term at the sentencing hearing," the next sentence states that he "based his determination to plea [sic] guilty, in part, on the court's informing him that he was facing a minimum of two and maximum term of three years supervised release."  Memorandum of Law in Support of Motion to Vacate, Set Aside or Correct Sentence, Docket Entry No. 1 in C.A. No. H-05-3177, p. 9.

he faced a term of up to life imprisonment, with a minimum term of fifteen years.  Knowing this, Huff chose to plead guilty.  He now claims that a two-year difference in the maximum term of supervised release would have convinced him to take a chance at trial, when the possibility of life in prison would not.  This is not a credible argument.

Furthermore, the Presentence Investigation Report ("PSR"), which was read by both Huff and his attorney[8] prior to the sentencing, states in Part D, Sentencing Options, that Huff meets the criteria for an enhanced penalty under 18 U.S.C. § 924(e); and, therefore, the court may impose a term of supervised release of not more than five years under the statute, and from three to five years under the sentencing guidelines.  (PSR, p. 24)  If Huff's decision to plead guilty was influenced by his misapprehension over the maximum term of supervised release, he had ample opportunity to mention it at the sentencing hearing, but failed to do so.  The court notes this omission not to raise any waiver argument, but to

---

[8]The following exchange took place at Huff's sentencing:

THE COURT:     Mr. Huff, have you had a chance to read the presentence report before today?

THE DEFENDANT: Yes, sir, I have.

THE COURT:     Have you had a chance to discuss it with your attorney before today?

THE DEFENDANT: Yes, sir.

Sentencing Hearing Transcript, Criminal No. H-02-742, 6:9-6:14.

-19-

emphasize the credibility problems with Huff's bare assertion that he would not have pleaded guilty had he known he was subject to five, rather than three, years of supervised release.  See, e.g., Armstead, 37 F.3d at 209.

Huff has an extensive criminal record, including one prior conviction in federal court, rendering him familiar with the federal process and the importance of the PSR.  He read the document, so was on notice of the potential five-year supervised release term.  Even assuming, arquendo, that Huff did not read or understand this part of the PSR, if Huff truly would not have pleaded guilty if he knew that he could be subject to five years of supervised release, "it seems he would have been protesting from the rooftops" at his sentencing, after having received five years of supervised release.  Id.

Moreover, even had Huff gone to trial, he would likely have been convicted, as the evidence of his guilt was substantial.[9]  For

---

[9]On August 29, 2002, two Conroe Police Department officers detained and arrested Huff for forgery and identity theft at a bank in Conroe, Texas.  Upon arrest, the officers found two stolen passports, and an identification with Huff's photo and another person's name.  An inventory of Huff's automobile, parked in the bank lot, resulted in the officers' confiscating other items believed stolen.  Huff refused to answer the investigator's questions but did reveal that he was on supervised release.  A search warrant for the house where Huff was residing was executed the same day.  In addition to other items, the police seized from Huff's residence a firearm loaded with ammunition and an additional box of ammunition.  The firearm was located in a dusty overhang space between the master bedroom and the bathroom.  The officer

(continued...)

the foregoing reasons, Huff has failed to show that he was prejudiced by his attorney's arguably deficient performance.

Huff next argues that his counsel was ineffective for failing to investigate whether his prior state convictions qualify as "violent felonies" under § 924(e) of the ACCA.  Specifically, Huff argues that his attorney failed to investigate and discover that his 1982 burglary of a habitation conviction was actually an "attempted burglary" conviction.  (Memorandum of Law, pp. 13-19) Huff further claims that his attorney was deficient in failing to argue that the 1982 burglary conviction and his 1987 burglary of a habitation conviction fail to meet the definition of a violent felony under § 924(e).

The PSR listed three prior state felony convictions qualifying as either a "violent felony" or "serious drug offense" under the ACCA.  These convictions were (1) burglary of a habitation in 1982 in the 208th District Court of Harris County, (2) burglary of a habitation in 1987 in the 208th District Court of Harris County, and (3) conspiracy to possess with the intent to distribute

---

[9](...continued)
noticed that there was no dust on the firearm or ammunition.  Two Bureau of Alcohol Tobacco and Firearms (ATF) special agents spoke with Mrs. Winston, Huff's mother.  She stated that she knew that the firearm seized from Huff's residence belonged to another person and had been stolen during a burglary of that person's residence. An ATF special agent confirmed that the firearm seized from Huff's residence was manufactured in Connecticut, and had therefore traveled in interstate commerce.  (PSR, pp. 3-4)

marijuana in 1995 in the United States District Court for the Western District of North Carolina. (PSR, pp. 8-9)

Huff's attorney objected to using the two burglary-of-a-habitation convictions as predicate offenses for the § 924(e) enhancement, but asserted this objection on a different basis than the one Huff asserts here.[10]   First, Huff argues that the facts of his 1982 burglary of a habitation conviction only support a conviction for attempted burglary of a habitation.   Huff states that his attorney should have researched the prior state conviction and discovered that the underlying facts of the case could only support a conviction for attempted burglary.   "Counsel could then have brought this error to the state court and requested correction of the judgment and raised the state judgment error in the district court for consideration." (Memorandum of Law, p. 16)

Even had Huff's attorney contested the validity of Huff's 1982 state burglary conviction on that basis, the objection would have been overruled.   Huff pleaded guilty to the crime of burglary of a habitation in 1982.   Absent a conviction obtained in contravention of a defendant's right to counsel, there is no right

_____

[10]Huff's attorney argued that neither the 1982 nor the 1987 offense was a predicate offense under 18 U.S.C. § 924(e) because Huff received an Order of Discharge in 1994 restoring his civil rights, and thus allowing him to possess a firearm.   Supplement to the Defendant's Objections to the Presentence Report, Criminal No. H-02-742, objection five.   The court overruled this objection, and the Fifth Circuit affirmed that decision in Huff, 370 F.3d at 457-62.

-22-

to collaterally attack state court convictions at federal sentencings. <u>Custis v. United States</u>, 114 S.Ct. 1732, 1739 (1994). Therefore, Huff's attorney was not deficient in failing to challenge the use of his 1982 burglary conviction on this basis.

Huff also claims his counsel was ineffective for failing to argue that his Texas burglary of a habitation convictions do not qualify as violent felonies under 18 U.S.C. § 924(e). (Amended Motion, p. 2)[11] The relevant portion of the statute states that a violent felony is any crime punishable by imprisonment for a term exceeding one year that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). The Supreme Court has held that for purposes of a § 924(e) enhancement a person has been convicted of burglary if he has been convicted of "any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." <u>Taylor v. United States</u>, 110 S.Ct. 2143, 2158 (1990).

In determining whether a conviction under the Texas burglary statute constitutes a burglary conviction for purposes of § 924(e), the court generally looks only to the fact of conviction and the

---

[11]The government did not respond to this portion of Huff's argument, asserted only in his supplemental motion.

statutory definitions of the prior offenses, not to the particular
facts underlying those convictions.   Id. at 2160.[12]   The Texas
statute in place at the time Huff committed his offenses states
that a person commits burglary if, without the consent of the
owner, he

> (1)  enters a habitation or a building (or any portion of
> the building) not then open to the public, with intent to
> commit a felony or theft; or
>
> (2)  remains concealed, with intent to commit a felony,
> or theft, in a building or habitation; or
>
> (3)  enters a building or habitation and commits or
> attempts to commit a felony or theft.

TEX. PENAL CODE § 30.02(a).  Habitation is defined as "a structure or
vehicle that is adapted for overnight accommodation of persons, and
includes:  (A) each separately secured or occupied portion of the
structure or vehicle; and (B) each structure appurtenant to or
connected with the structure or vehicle."   TEX. PENAL CODE
§ 30.01(1).  The Fifth Circuit has held that § 30.02 of the Texas
Penal Code is a generic burglary statute under the standards put
forth by the Supreme Court in Taylor, 110 S.Ct. at 2158.
United States v. Silva, 957 F.2d 157, 162 (5th Cir. 1992).[13]  Huff

_____

[12]The court may look beyond the mere fact of conviction in a
narrow range of cases, not applicable here, where a jury was
actually required to find all of the elements of a generic
burglary.  Taylor, 110 S.Ct. at 2160.

[13]Huff argues that his counsel was ineffective for failing to
argue that his convictions for burglary of a habitation do not
qualify as violent felonies.  Huff does not argue that his counsel
(continued...)

argues that this case is not binding because the Fifth Circuit did not directly consider the question of whether the statutory definition of "habitation" takes the Texas statute out of the generic definition of burglary in Taylor. Although Silva does not directly address this issue, it does unequivocally hold that "[s]ection 30.02 of the Texas Penal Code is a generic burglary statute, punishing nonconsensual entry into a building with intent to commit a crime." Id. See also United States v. Garza, 146 Fed. Appx. 756 (5th Cir. 2005) (unpublished).

The Ninth Circuit has addressed the precise issue that Huff has cited in his pleading. See United States v. Sweeten, 933 F.2d 765, 770-71 (9th Cir. 1991). In Sweeten the defendant argued that because Texas's burglary of a habitation statute defined habitation to include "vehicles," the Texas burglary statute was nongeneric

---

[13](...continued)
was ineffective for failing to argue that the government did not present sufficient evidence of the burglary of a habitation conviction. The court notes that although the government did not present authenticated copies of the prior judgments against Huff or a copy of the state statute, the PSR contained the nature of the charges, the dates of the convictions, the courts in which he was tried, the docket numbers assigned to those trial courts, and the punishment imposed. See United States v. Hornsby, 88 F.3d 336, 339 (5th Cir. 1996); United States v. Lynch, 145 Fed. Appx. 482, 484 (5th Cir. 2005) (unpublished). Furthermore, because Huff did not raise failure to produce sufficient evidence of the prior convictions in his § 2255 petition, this court will not sua sponte address this argument. Moreover, even were this failure by Huff's attorney objectively unreasonable, had Huff's attorney objected the government could have produced evidence of the prior convictions sufficient to meet the requirements of United States v. Taylor, 110 S.Ct. 2142, 2159-60 (1990). See United States v. Martinez-Cortez, 988 F.2d 1408, 1416-17 (5th Cir. 1993).

under Taylor.  Id. at 770.  The Ninth Circuit disagreed.  It held
that the Texas statute was a generic burglary statute because the
definition of habitation includes only those vehicles whose primary
purpose is to serve as a dwelling and not a mode of transportation.
Id.

The court is bound by the Fifth Circuit's holding that a Texas
conviction for burglary of a habitation is a generic burglary
statute, qualifying a conviction under this statute as a predicate
conviction under § 924(e).  Silva, 957 F.2d at 162.  Furthermore,
the Ninth Circuit's reasoning in Sweeten is persuasive.  Given the
existing precedent, Huff's attorney was not unreasonable in failing
to argue that a Texas conviction for burglary of a habitation was
not a qualifying generic burglary conviction under Taylor.

Finally, Huff argues that his attorney was ineffective for
failing to object to the court's imposition of a consecutive
sentence for his supervised release violation and his 922(g)(1)
violation.  (Memorandum, pp. 19-22)  The court sentenced Huff to 24
months of imprisonment for his supervised release violation, and
subsequently sentenced him to 180 months on the 922(g)(1)
violation, with the two sentences to run consecutively.  Huff's
argument stems from his attorney's failure to properly object to
the imposition of consecutive sentences based on U.S.S.G.
§ 5G1.2(b).  Due to this failure to preserve the objection for

appeal, the Fifth Circuit reviewed the alleged error under the "plain error" standard of review.  Huff, 370 F.3d at 464.

At the time of Huff's sentence, Fifth Circuit precedent held that U.S.S.G. § 5G1.3(c) requires that a court impose a consecutive sentence if the defendant was convicted of a crime committed while on supervised release.  United States v. Alexander, 100 F.3d 24, 27 (5th Cir. 1996).  On November 1, 2003, after Huff's sentencing, the Sentencing Commission, by amendment 660, revised an application note to § 5G1.3.  The revised application note made it clear that § 5G1.3 did not require that courts impose consecutive sentences, but rather gives a district court discretion to have the sentence for the new offense run concurrent to the sentence for supervised release revocation.[14]  The Fifth Circuit, in determining whether the change was merely clarifying and could therefore be applied to Huff, decided that, under the plain error standard of review, it was not.  "We hold that it is not clear, plain or obvious that the relevant part of amendment 660 is merely clarifying."  Huff, 370 F.3d at 467.  The Fifth Circuit went on to state:

> Even if the relevant portion of amendment 660 were clarifying so that on a remand the district court could exercise discretion to make the 180 month sentence wholly or partially concurrent with the twenty-four month sentence, there is nothing in the record to suggest that the district court would likely do so and it is clear that under amendment 660 making the sentence entirely

---

[14]The Fifth Circuit's opinion in Huff explains the applicable U.S.S.G. changes in detail.  Huff, 370 F.3d at 464-65.

consecutive is not merely permitted but is what the
Commission 'recommends.'

Id.

The substance of Huff's argument on this issue is that his
counsel was ineffective for failing to properly preserve the
consecutive sentence argument for the Fifth Circuit.  Huff argues
that had the alleged error been properly preserved, the amended
application note would have been applied, and the case would have
been remanded for resentencing.  This argument is unavailing for
several reasons.  First, because of Fifth Circuit precedent at the
time, the objections of Huff's attorney were foreclosed.  Second,
even had Huff's attorney made a proper objection, preserved for
appeal, Huff was not prejudiced.  The Fifth Circuit might have
found that the amendment was clarifying and remanded the case for
resentencing.  But based on its written opinion, it seems more
likely that the Fifth Circuit would have determined that
resentencing was not warranted because there is nothing in the
record to suggest that the district court would impose a wholly or
partially concurrent sentence on remand.  Finally, even assuming
that the Fifth Circuit would have remanded the case for
resentencing had the error been properly preserved for appeal, the
result would not have been any different.  The court would have
imposed a consecutive sentence even if given the option of imposing
a concurrent sentence under the new application note to U.S.S.G.

§ 5G1.3(c).  Huff has failed to demonstrate prejudice and has not met his evidentiary burden.

## D.    Ineffective Assistance of Counsel -- Appeal

Criminal defendants have a constitutional right to receive effective assistance of counsel on direct appeal.  Evitts v. Lucey, 105 S.Ct. 830 (1985).  In assessing an ineffective assistance of counsel on appeal claim, the two-part Strickland test is used, and the defendant must show that his attorney's performance was both deficient and prejudicial.  United States v. Williamson, 183 F.3d 458, 462 (5th Cir. 1999).

Appellate counsel is not deficient for failing to raise every non-frivolous issue on appeal.  Jones v. Barnes, 103 S.Ct. 3308, 3313 (1983).  Failure to raise an argument on appeal is considered deficient only when the decision not to raise it "fall[s] below an objective standard of reasonableness."  United States v. Reinhart, 357 F.3d 521, 525 (5th Cir. 2004) (citation omitted).

To establish prejudice Huff must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Reinhart, 357 F.3d at 530 (citation omitted).  A reasonable probability is that which renders the proceeding unfair or unreliable, undermining confidence in the outcome.  Id.  When, as here, the claim is based on failure to raise an issue on appeal, the prejudice prong requires that the petitioner show that the

court would have afforded relief on appeal.  Id.  This requires
that the court counter-factually determine the probable outcome on
appeal had counsel raised the argument.  Id.

Huff argues that his appellate counsel was ineffective because
of the following alleged failures:  (1) failure to argue the
supervised release error; (2) failure to argue that the sentencing
court should not have used Huff's 1982 burglary conviction as a
prior violent felony under § 924(e); (3) failure to file a Federal
Rule of Civil Procedure 28(j) letter supporting the alleged
sentencing error; and (4) failure to file a reply brief in
opposition to the government's response.

The court can readily dispose of Huff's arguments regarding
the latter three issues.  As discussed above, Huff's claim that his
attorney should have raised the validity of his state burglary
conviction, which he characterizes as only supporting an "attempted
burglary" conviction, has no merit.

Huff's complaint about his attorney's failure to file a 28(j)
letter has no merit.  The 28(j) letter Huff faults his attorney for
not writing would have had no effect on the Fifth Circuit's
disposition of his appeal.  Huff states that if his attorney had
raised amendment 660 to the U.S.S.G. rather than the Fifth Circuit
raising it sua sponte, his appeal on this issue would have been
reviewed under the harmless error standard of review rather than
the plain error standard of review.  This is not accurate.  The

-30-

Fifth Circuit reviewed this issue under the plain error standard of review because Huff's attorney failed to preserve his objection at the trial court level, not because Huff's attorney failed to raise the amendment in his appellate brief.  <u>Huff</u>, 370 F.3d at 463-64. Even had Huff's attorney raised the argument on appeal, the Fifth Circuit would have used the plain error standard of review.

The mere fact that Huff's attorney failed to file a reply brief to the government's response does not establish that counsel's performance fell below an objective standard of reasonableness.  Huff fails to address the specific issues that his attorney could have rebutted in his reply brief, which prevents Huff from establishing any prejudice resulting from the lack of a reply brief.

The court next turns to an argument that requires more serious consideration:  the failure of Huff's counsel to object to the Rule 11 error on appeal.  Huff was erroneously advised during his rearraignment that he was subject to a minimum term of two and a maximum term of three years' supervised release rather than the actual minimum of three and maximum term of five years' supervised release applicable under the § 924(e) enhancement.[15]  Rule 11

_____

[15]As discussed above, a violation of 18 U.S.C. §§ 922(a)(2) and (g)(1) is a Class C felony, which subjects a defendant to up to three years of supervised release.  18 U.S.C. §§ 3559(a)(3), 3583(b).  However, the government had filed a notice of intent to seek enhanced punishment pursuant to 18 U.S.C. § 924(e).  Section 924(e) turns the violation into a Class A felony, which subjects a
(continued...)

violations on direct appeal are reviewed using a two-step question harmless error analysis: (1) Did the sentencing court in fact vary from the procedures required by Rule 11 and, (2) if so, did such variance affect substantial rights of the defendant? <u>United States v. Johnson</u>, 1 F.3d 296, 298 (5th Cir. 1993) (en banc).

The first prong of the <u>Johnson</u> test was satisfied. By providing Huff with incorrect information regarding the minimum and maximum term of supervised release, the court varied from procedures required by Rule 11. In determining whether the variance affected the substantial rights of the defendant, the Fifth Circuit would have focused on whether the defendant's knowledge and comprehension of the full and correct information would have been likely to affect the defendant's willingness to plead guilty. <u>Id.</u> at 302. The magnitude and likely impact of the mistake in the present case is negligible. To determine whether flawed advice regarding supervised release is harmless, the Fifth Circuit has compared the statutory maximum sentence to the "worse case" scenario that a defendant could face if supervised release were revoked on the last day of its term. <u>See, e.g.</u>, <u>United States v. Cuevas-Andrade</u>, 232 F.3d 440, 444 (5th Cir. 2000); <u>United States v. Hekimain</u>, 975 F.2d 1098, 1101-02 (5th Cir. 1992) (citing

---

[15](...continued) defendant to a supervised release term of at least three but not more than five years. <u>See</u> 18 U.S.C. §§ 3559(a)(1) & 3583(b)(1); U.S. Sentencing Guidelines Manual § 5D1.2 (2005).

-32-

United States v. Bachynsky, 934 F.2d 1349 (5th Cir. 1991) (en banc)).  As discussed above, Huff understood that he faced a maximum term of life imprisonment.  He was sentenced to 180 months' imprisonment in addition to five years of supervised release.  Even under a "worst case" scenario, the total period of time for which Huff would be incarcerated is substantially less than life in prison.  Furthermore, as noted above, the court cannot give credence to Huff's self-serving argument that he would not have pleaded guilty had the court correctly informed him that he was subject to a maximum term of five years' supervised release.  Thus, the court concludes that the Fifth Circuit would have held that the Rule 11 error did not affect Huff's substantial rights, and therefore, even had Huff's attorney objected to the Rule 11 error on appeal, the Fifth Circuit would have been unlikely to remand the case for resentencing.  For all of these reasons, Huff has failed to meet the two-part Strickland test.

## E.  Sixth Amendment Violation at Sentencing

Huff's final argument for § 2255 relief is that his sentence violates Blakely v. Washington, 124 S.Ct. 2531 (2004), and United States v. Booker, 125 S.Ct. 738 (2005).  The Fifth Circuit has recently determined that neither Blakely nor Booker applies retroactively on collateral review to an initial § 2255 motion. United States v. Gentry, 432 F.3d 600 (5th Cir. 2005).

## III.  Conclusion and Order

For the reasons stated above, respondent's Motion to Dismiss (Docket Entry No. 41 in Criminal No. H-02-742) is **GRANTED**, and Huff's § 2255 motion, as supplemented, is **DENIED.**

**SIGNED** at Houston, Texas, on this 24th day of February, 2006.

_____
                    SIM LAKE
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JAMES ELI HUFF II,                    §
Reg. No. 666071-079,                  §
                                      §
            Petitioner,               §
                                      §
v.                                    §        CIVIL ACTION NO. H-05-3177
                                      §
UNITED STATES OF AMERICA,             §
                                      §
            Respondent.               §


## FINAL JUDGMENT


        In accordance with the court's Memorandum Opinion and Order
entered today, this action is **DISMISSED.**

        For the reasons stated in the court's Memorandum Opinion and
Order and because the petitioner has not made a substantial showing
of the denial of a constitutional right, a Certificate of
Appealability is **DENIED.**

        This is a **FINAL JUDGMENT**.

        **SIGNED** at Houston, Texas, on this 24th day of February, 2006.



                                    _____
                                              SIM LAKE
                                    UNITED STATES DISTRICT JUDGE